Good morning, Your Honor. Ronald M. Greenberg appearing on behalf of the appellants Michael Ackerman and Floyd Kurloff, and in the argument I'll just refer to them as Ackerman-Kurloff, which we've done, and the respondent Jose Eber will be Eber. My plan is to take about ten minutes, reserve about five, give or take. Most of my time will be devoted to the appeal concerning the denial of the arbitration. I will have some brief comments on the other appeal pending. Counsel, I've been, I was thinking last night about this case, and I was thinking that the technical aspects maybe sound a little more complicated than the case really is. I'm not sure of this, and I'm sure you know more than I do about bankruptcy, but help me on this. Ordinarily the way it goes when somebody is suing a potential bankrupt, and then the bankrupt files for bankruptcy, everything stops under the automatic stay, and then the bankruptcy judge exercises discretion about whether to lift the stay or not, and if he does not lift the stay, then the assets are gathered together and distributed according to priorities with a judgment creditor who didn't get judgment yet out of luck as far as having a higher priority. I think what the bankruptcy judge was thinking, and what I'm kind of wondering about, is whether your fellas were trying to avoid the priority scheme even though they didn't get the stay lifted so they could proceed with their arbitration, trying to get treated as though they had. And that's why the bankruptcy judge thought that dischargeability was the real issue, even though it purported technically to be something else. Educate me. Well, number one, in this case we don't have any priority of creditor problem. We don't have any assets. We don't have any distribution. We don't have any reorganization. This is a no-asset bankruptcy in which the debtor was from the outset was, before you can decide whether a debt is dischargeable, you first have to determine if there's a debt. And in this case... Is that so? Aren't there often discharges of potential or inchoate claims? I think in the discharge, if you submit the entire matter... I mean, people often list on their schedule claims that have not been reduced to judgment and that are disputed. Well, if the debt is disputed, then somehow, some way, someone is going to have to determine, is there a debt? Because... Why? If you file... No-asset bankruptcy. If you file an adversary proceeding that relates to your debt, if you're saying, my debt, contingent... Look, if it's a no-asset bankruptcy and the bankrupt has listed the potential debt on the schedule, why does anyone have to adjudicate whether there's a debt or not? Because the debtor, if the debt is not discharged... Can it be discharged without making sure it's even a debt? If the creditor doesn't seek to prevent discharge, yes. But from a creditor's... As my colleague just indicated, you have all kinds of things, potential tort claims, potential contract claims, contingent claims of one kind or another. They're listed all the time on the schedules and they're regularly discharged without anybody's adjudicating whether they're debts, aren't they? But those debts don't fall within the scope of the type of debt that may not be dischargeable. It's where you have a... You're alleging fraud. Everybody understands that if you're able to prove to the bankruptcy court or some other court, as the case may be, that there is a fraud involved and it's not dischargeable, that's another matter. But the point that you made initially and that Judge Kleinfeld engaged with you on was that you first have to determine whether there's a debt before you can go any farther. And I think, I hope you would agree that as a bankruptcy law matter, that's just not correct. You may be able to remove the listed item from the category based upon litigation determining whether there's a fraud involved. But as far as listing them, as far as being discharged with regularity when there is no such contest to whether there's fraud or not happens all the time, doesn't it? I agree, but in this case... You're saying your case is different because there's a fraud involved here. And we did object. But it doesn't mean that you can't discharge something before you find out whether there's a debt. No, I was focusing more on our facts. Okay. I understand. In any event, let me just sort of outline in perspective where we're at. Before we get too far, Counselor, just a quick question. What's the proper standard here? Because there's some, there's not agreement as to what the proper standard is. On the issue of whether a bankruptcy court has discretion to not allow arbitration is de novo. Assuming a bankruptcy court has discretion and exercises that discretion, it's abusive discretion. There are two... Why don't we look at the bankruptcy court's factual determinations for clear error and review its legal conclusions de novo. Wouldn't that be the correct mix? Well, it's a legal conclusion or a legal issue as to whether the bankruptcy court has discretion. So that's de novo. And I believe if it's an exercise of discretion, if you have discretion, it's abusive discretion. That's my understanding of the law. Didn't it make factual determinations though in connection with this decision to deny ANK's motion to compel arbitration? Weren't factual decisions made? It made the decision to deny the motion to compel arbitration on one basis only. And that was a concern about collateral estoppel impact. The record is clear in that regard. There were no factual determinations made when considering the motion to compel arbitration? No. We have no findings as required by law. We don't. We just have the reporter's transcript. Why doesn't this fall squarely within this holding in our recent decision in In re Thorp that arbitration of dischargeability, which is what you saw in effect by arbitrating whether it was fraud, arbitration of dischargeability inherently conflicts with the goals of centralized resolution of bankruptcy issues preventing piecemeal litigation and the power of a bankruptcy court to enforce its own orders? Your Honor, if I had Thorp and those facts, Thorp is correct. We agree with Thorp. But what Thorp requires is a two-step process. First, you determine does the bankruptcy court have discretion. Is there a conflict? It says, Thorp said a bankruptcy court has discretion to decline to enforce otherwise applicable arbitration provision only if arbitration would conflict with the underlying purposes of the bankruptcy code. So you don't get to the issue of discretion until you first make a determination that allowing arbitration in the particular case Isn't that the determination that the bankruptcy judge made in this case? No. He never spelled out how a conflict would conflict with the underlying purposes of the Bankruptcy Act. He did not. All he said was, you want me, in substance, to be collaterally stopped by findings an arbitrator makes concerning fraud or breach of fiduciary duty. And I come back and I say this. Didn't the bankruptcy court find that this was a core issue? What he said was that you were, in actuality, seeking to arbitrate dischargeability, which is a core bankruptcy issue. That's what the court said, similar to what happened in Thorp installation. Number one, it doesn't make it right that he said it. Number two, we didn't say that. On the record, we have said over and over, we are not seeking to have the court, an arbitrator, decide dischargeability. Case law we cited shows that when an arbitration is over, confirmed as a judgment, it is the bankruptcy court who reviews the findings made in the arbitration to decide whether all of the requisite findings are necessary or not. What do you have in the record to support your position? Because it sounds to me like you're just disagreeing with what the bankruptcy court found. The bankruptcy court said, you know, this thing with the orange web feet and waltz and quacks is a duck. He said, no, it's not a duck. It's something else. So what do you have to substantiate your position other than your disagreement with the bankruptcy court's finding? Because what he's telling you is that I know what you're saying, but that's not what you're doing. What he is saying is that the impact of collateral estoppel could, might, cause him to have to decide that that is not dischargeable. Let me, kind of tagging on here to what Judge Marbley indicated, hopefully you can tie these together in an answer. I find what you're suggesting to be really quite convoluted because on the one hand, you're saying that the arbitrator is to determine whether or not there was fraud. The bankruptcy judge is saying, well, wait a minute, if you do that, that's really decided the issue and it is fraud that determines whether or not there's dischargeability. On the other hand, if you're saying, if he decides fraud that the bankruptcy judge is not bound by that, then in fact, it is the arbitrator. There's no point in having the arbitration because it doesn't mean anything, or alternatively, the bankruptcy judge is having his jurisdiction in effect taken away. I'll tell you why he's wrong. Okay. Brogan. In Brogan in 1991, the United States Supreme Court held that collateral estoppel applies in dischargeability proceedings. Now, if, if... Why would that matter to you? Why? There was no collateral estoppel because nothing ever went to judgment. But... There'd only be collateral estoppel if there'd been an arbitration award that was confirmed. But logically, if collateral estoppel applies in dischargeability proceedings, how can one conclude that the possibility of collateral estoppel conflicts with the bankruptcy code? It doesn't. Easy. The possibility of collateral estoppel is different from collateral estoppel. There's collateral estoppel if there was a judgment. There isn't if there isn't. So does that mean... And the whole idea of a lot of people going into bankruptcy is to prevent judgments. And often they succeed. But if we're going to have a trial on a fraud issue, do we say that you have to have your... Look, people threaten bankruptcy all the time when a creditor's going after them. They threaten bankruptcy and the creditor threatens to get a judgment on a non-dischargeable ground. And they go to the mat sometimes. And sometimes one beats the other to the punch. It's not... It may not be fair, but I don't understand what's unusual. It's not a question of fairness. It's a question of whether. The fundamental question is whether concern about collateral estoppel justifies denying a right to arbitration, which is different than a trial court or anything else. The Supreme Court has said the right to arbitration is allowed unless there's a conflict. We submit that there's no conflict about a concern of collateral estoppel because the Supreme Court has held collateral estoppel applies in dischargeability proceedings. Are we to say now if they filed their bankruptcy while it was under submission with the arbitrator or there was one more day left... It would be tough luck for you. I don't think the right to arbitration under the Federal Arbitration Act is dependent upon what stage it's in. You have the right or you don't. Then you must think, it must follow from that logically, that it is an abuse of discretion not to grant relief from the stay for a pending arbitration proceeding. But I don't think there's any authority that says that. And under your iteration here, the whole notion about whether something is a core bankruptcy issue would no longer be relevant since we could always arbitrate. But I want you to your argument with respect to collateral estoppel answers the consequence. It doesn't deal with the threshold issue of whether what you were seeking to do, that is, the arbitration you were seeking, was really a core bankruptcy issue. If it was or was not, then it would affect collateral estoppel. But isn't the threshold question, and you still, maybe if I go back and look at the transcript of this argument, I'll see that you answered it. But I don't know that you've answered the question of whether what you were seeking was a core bankruptcy issue. And that seems to be the kind of the threshold question. Thorpe made clear that core versus non-core is not the beginning and the end of the analysis. So, is seeking arbitration of fraud You said it's not a loan despised. It's not a loan. Okay. But what I'm saying here is if it's not core, there's no conflict. But it is related. I'll concede it's related to a dischargeability proceeding. Does that make it core? Perhaps. Herminion is a case, for example, where the court found it was core, but there was no conflict because it was no asset, no creditors involved. Very, very similar facts to this case. If we allow this to stand, then just picture for a moment. We have Judge Russell in courtroom number one. We have Judge Shefferly in courtroom number two. He was the judge in Herminion. I represent two clients, same, no asset. I walk into door court one, no arbitration. I walk into court two, I get arbitration. The result of what you're saying is arbitration will depend upon the luck of the draw. I have a different solution. If we write an opinion and solve the problem, then they'll both do the same. How would that be? That's what we hope to find. Indeed. We've run you over time. We'll give you a little bit of time to respond. But let's hear now from Mr. Shinbroth. May it please the Court, I am Jeffrey Shinbroth. I represent Jose Eber. Good morning, gentlemen. Apparently, the parties agree that the federal arbitration act's reach does not extend to the bankruptcy discharge or the question of dischargeability. And we both agree, I believe, that Thorpe insulation applies. We now have a standard of review from Thorpe insulation, and we have a way to look at arbitration in the context of bankruptcy. The only glitch here that I'm seeing in your line of thought is, I don't think the bankruptcy judge ever said in so many words before justifying an outcome that had already preceded what he said, I don't think he ever said, well, I think allowing this case to go to arbitration would interfere with the goals of bankruptcy. May I respond, Your Honor? Please do. At the appellant's excerpt with record on page 83, line 20, Mr. Greenberg says at the end of that sentence, the burden is really on the debtor to show that there is an inherent conflict or it necessarily jeopardizes. And Judge Russell says, well, I think they have. And then he went on to explain many pages on the record of how dischargeability should be heard by a bankruptcy judge. And he found, and it is a finding of fact, Your Honor, that the core proceeding involved here was the determination of the fraud and dischargeability. We actually don't even need Judge Russell to say it, because the appellants have said it, both in their brief and in their complaint, that, A, the complaint is a core proceeding, B, that the court has subject matter jurisdiction over it, and in the complaint, the appellants ask for money in their underlying complaint in the bankruptcy court. They have submitted as much as you can to the jurisdiction of the bankruptcy court. They've asked for a money judgment. They've asked for a determination of dischargeability. And they've said it's a core proceeding. This is a completely different case than Hermoyan, and I am very confident that Judge Russell would have ruled the same way as a Hermoyan court. It's different from both the debtor and the creditor side. Hermoyan agreed in a state court that arbitration should happen. He makes this agreement four days before a jury trial. He picks an arbitrator. They're getting ready for arbitration, and he files a bankruptcy. I mean, on the eve of the arbitration. This is one of those indicia of fraud that bankruptcy courts are very aware of when they're balancing whether or not to do something. But in the case of Hermoyan, he had several related entities related to the same claims. He started arbitration in those matters, and four and a half days into the arbitration, those entities filed bankruptcy. I can assure you, but those sorts of facts, those sorts of indicia of bad faiths are the kinds of things that all bankruptcy courts, including Judge Russell, take very seriously. From the creditor's side, it's also a different case. The appellants asked, as I said, for money judgment. They said it's a court proceeding in their complaint, and they submitted to subject matter jurisdiction. According to the Hermoyan decision, the only thing that was asked for in Hermoyan was a determination of dischargeability and another interesting fact, which gets me to what I was thinking about as well, Your Honor, last night, this whole discharge issue, because that's the harder issue. They asked for a denial of discharge under Section 727. It's a completely different case, and the reason we have different results is because we have different facts. Judge Russell applied basically the same law as Thorpe Insulation as did Judge Wu, and Judge Sheffley in the Hermoyan case did the same thing. Bankruptcy judges do this all the time. They balance the facts. And when you have a bad faith debtor who's filing bankruptcy on the eve of an arbitration hearing and in the middle of four other arbitrations, bankruptcy courts oftentimes say, make some findings, and I'll figure out how that applies to dischargeability. Judge Russell acknowledges, I think three times on the record, that collateral estoppel applies in bankruptcy cases. It just doesn't apply in this case because nothing's happened yet. I want to change the focus just for a minute to something that came a little later. As I understand it, the motion to obtain relief from the stay was made when the temporary injunction that comes with the filing was still there. Yes. Then the plan was adopted. It became a permanent injunction, and the court ruled on the motion. My question to you is, at that point, did the court still have jurisdiction to rule in what was essentially a moot situation because the original stay was no longer there, or does it retain jurisdiction for purposes of granting or denying a motion? Thank you, Your Honor. When I first started this case, I thought the arbitration was going to be the difficult issue. But for me, it's just very clearly not arbitratable once we have a court proceeding implicating the other night. This discharge issue has kept me up at night because it gets convoluted when I think it through. First of all, I don't think it's moot. I think Judge Rue applied the right standard and sampled V. Johnson. That is the Ninth Circuit law, which is... It's commonly done. I know that. It seems like almost everybody goes ahead and rules. But just as an intellectual point, it's kind of a brain teaser because you've got this – the original stay is gone, so how can it not be moot? It depends on the facts, Your Honor. The law is that a moot matter is one where issues are no longer alive or parties lack an interest in the outcome. And that sampled V. Johnson Judge Rue cited that. Right. The more common brain tease part comes when it's – we talk about mootness as a matter that does not arise out of existing facts or rights. It's more the, you know, English definition of it. So if you've got a secured creditor who has a first mortgage on a house and he files a motion for relief from the automatic stay and the discharge is entered, that motion for relief from the automatic stay is now moot because the discharge does not stop the secured creditor from going forward with his or her foreclosure, the bank's foreclosure. Secured creditors generally pass through bankruptcy unaffected. And in one of the cases cited by the appellant Shultz, the creditor sought relief from the sister. Discharge is entered. Now there's no more judgment. The judgment's voided. So of course it's moot. But it's different when what you are seeking relief from the automatic stay for, and that's the key, what do you seek for, is to compel arbitration. And once the discharge is entered, you keep saying, I want arbitration, I want arbitration, I want arbitration. That's still alive. It's alive today. So if we were to find that the motion was moot and we vacate the order, then in effect it gives them a second bite of the apple to go ahead and try again, right? Only this time with respect to the permanent injunction? Or what happens? Well yeah, that's where I get lost. Once the Section 524 injunction is entered, there are no more common law causes of action. There's no private rights. There are no state court statutory, state law statutory rights. I'm a little confused at this point. I thought the only issue of the injunction was to compel arbitration to decide whether the bankrupt owed the creditors money, either for breach of contract or fraud or anything else. And I thought that the claim of the creditors was discharged in bankruptcy, so there would be nothing to enjoin, nothing to arbitrate. Have I got that wrong? No. That's my argument, Your Honor. I'm maybe not articulating it correctly. The discharge is entered, there is no more breach of contract, which logically means all that's left are the Section 523A2A, A4, and A6 claims which are within the exclusive jurisdiction of the Bankruptcy Court. So if all that's left is a breach of contract, which is what's the exclusive jurisdiction of the Bankruptcy Court, I agree, there's nothing left to arbitrate. The appellants keep saying, no, it's liability. But they define liability everywhere, including in their briefs. It would only be liable if there's a cause of action, and it would be a cause of action for damages here, as I understand it, rather than for some sort of equitable relief. Well, but the only way to get to damages after the injunction is entered is through Section 523A2A, A4, or A6. The breach of contract claims are gone. So how do they get to damages? Which they submitted to the Bankruptcy Court. There's a complaint. The complaint asks for $3 million plus in damages, which doesn't always happen. A lot of complaints, I would bet the Hermoyan complaint doesn't ask for damages. They just want the declaratory relief. But that aside, you're right, Your Honor, they want damages based on, as they've said, fraud and breach of fiduciary duty. Those are within the exclusive jurisdiction of the Bankruptcy Court by statute. And so it does get convoluted. But I don't think it can be moot, Your Honor, because they're here today. They still want arbitration. The stay, when the permanent injunction is entered and the other one goes to court, it's still arbitration. But you say you don't think that it can be moot, although you do acknowledge that the court is divested of jurisdiction. Which court, Your Honor? The Bankruptcy Court. The Bankruptcy Court is the only court with jurisdiction besides the higher courts to determine fraud and breach of fiduciary duty once the discharge is entered, is my argument. At some point, that motion to compel by your admission became moot. At what point was that? Well, I don't think it's mootness. I may have misspoke. It's more of something like the law of the case, because I don't know what happens. I think my client should win on both mootness and the motion to compel arbitration. Well, Your Honor, the stay was no longer in effect at the time that the Bankruptcy Court ruled on the motion. Is that right? That's right. But the permanent injunction was. The permanent injunction was there. Interestingly, we only have a BAP case. I thought the injunction was the automatic one from the automatic stay. There's two injunctions, Your Honor. And interestingly, I think there's only a BAP case on it. I didn't find a Ninth Circuit case on it. That's the Aldrich case. But I couldn't find a Ninth Circuit case that said what the Bankruptcy Appellate Panel said. But there are two injunctions. When a bankruptcy petition is filed, automatically there is a temporary injunction, the automatic stay in bankruptcy. And it was that one that they filed against. They moved for relief. Right. And then, that's right, Your Honor, and then the discharge gets entered, and then there's a permanent injunction. And that permanent injunction, my argument, Your Honor, is there are no more common law causes of action to get them to amputate. Is there a permanent injunction against suing on the debts that have been discharged? Yes, sir. So what is left? Dischargeability. I'm sorry, Your Honor, did I not answer your question? I'm going to mull over. I think you did. I'm slightly confused. Go ahead. What has kept me up at night is the breadth of the permanent injunction. There is a permanent injunction. And really, I don't understand why the panelists went down the two tracks they did. I thought they would have appealed the motion for relief from the automatic stay and said, you know, Judge Russell, you misapplied the Tucson Estates Partners factors. You've got to weigh those factors. But they didn't. So if they didn't appeal the substantive ruling, and it's not moot, then how can Judge Russell now compel arbitration? He's already ruled that the automatic stay applies. Now the permanent injunction applies. It's more of a law of the case argument. I didn't make it because they didn't appeal the substantive ruling. But it is a brain teaser, Your Honor. But even if we can't tie the loop in a mental sense, the reality is to treat it as moot, meaning the motion that was originally filed when the automatic stay was in place as opposed to the permanent injunction, would allow them to go back and have another bite of the apple, right? So we really have to let the bankruptcy judge have the ability to rule on the motion and deny it, right? Even though the permanent injunction is in effect. If the court ruled that both arbitration should have been compelled and the belief in stay matter was moot, that would be true. But if this court rules that Judge Wu and Judge Russell were correct, that it's a court proceeding, as admitted, and the judge had discretion, he made findings of fact that it would conflict with the bankruptcy's right to, and actually statutory mandate that the bankruptcy court hears these matters. If the court rules that the motion to compel arbitration was correctly decided, I don't know if it matters what happens under the belief in stay because it's never going forward. Let me ask you, let's hypothesize. It may get a little easier to understand this if we kind of assume the opposite of everything. Let's hypothesize that we decide that the bankruptcy court and the district court erred in every respect. The motion for relief from stay should have been granted and the motion to compel arbitration should have been granted. And it goes back and our mandate is implemented and there's now an arbitration of whether the debtors breached their contract or fiduciary duty or committed fraud and the arbitration panel decides yes, all those things in favor of the creditors and that is then confirmed in district court. We already have a decision from the bankruptcy court that all debts are discharged and we already have a decision from the bankruptcy court that the debt to these creditors, whatever it may be, is dischargeable. Is that correct? Almost, Your Honor. The appellant's position is that, well, first of all, Judge Russell issued I think an eight-page findings of fact, written findings of fact on trial, found no fraud, no breach of fiduciary duty. Mr. Ebert is the poster child for a fresh start and exactly why we have to have strong bankruptcy laws in this country so he can go start a new business and start employing people and help our economy recover. I mean, Judge Russell saw it as the trier of fact our way. Now, the appellant's position is they can still appeal that. They filed a motion for reconsideration that their position hasn't been ruled on and Okay, but you haven't gotten to my hypothesis yet. Yes. Under your hypothesis, the debts would still be discharged because the bankruptcy court has exclusive jurisdiction to determine dischargeability and even if they get a judgment from another court that says this is breach of fiduciary duty under federal law or under New York law, Congress said that the bankruptcy courts have exclusive jurisdiction to determine dischargeability. If we reverse, then there's a possibility of a genuine conflict. One court says it's discharged, one court says it isn't. Yes. And your position would be the bankruptcy court wins on questions of discharge. I think Congress has said that, I think Congress has made it very clear. I mean, if there was ever a place where arbitration can't apply, it's where the United States Congress has said we've had enough of 71 years of state courts trying to determine dischargeability. Let's give it to the people who are doing this every day. Through the Depression, what would happen with credit, dischargeability was a defense. It was a defense. So someone would file bankruptcy and Sears Roebuck would sue them in New York even though they lived in Los Angeles and the debtor would have to run to New York and say no, I'm filing a motion for summary judgment, I've received my bankruptcy discharge. It wasn't it was a defense. And it got to a point where creditors were abusing that and Congress said no, no, no, dischargeability is going to be something the bankruptcy courts decide specifically so that debtors don't file bankruptcy just to run around the country defending their discharge. I mean, that's really what's happening here. We're going to give Mr. Greenberg a minute to respond. We had a long discussion, but thank you very much. There were so many points raised. Let me start by saying the complaint that we filed. If you look at the excerpt of Record 139, we clarified exactly what we meant in the joint status report filed within two months of filing the complaint. We said prior to the defendants filing for bankruptcy, the matter was in arbitration, pursuant to the written agreement, et cetera, et cetera. We're now going to move to live to stay. We want to proceed in arbitration. There was no ambiguity. That was never an issue in the trial court. The judgment status that came up. We filed a motion to amend the findings and conclusions within the time. It's been pending for over a year. I don't know what the status is. I just know that our time to appeal hasn't even begun to run until the bankruptcy court rules on that. The bankruptcy court said, and it's in the record, I'm going to get this tried before the Ninth Circuit rules. He succeeded. But what happens is if we're right, the judgment is vacated. That's Britain. And we cited that, and they don't dispute that, and they've not taken issue with it. So if we prevail, it's vacated. Mr. Greenberg, I hate to interrupt you, but we do have your argument in the briefs, and we will submit this case now and thank you both for your fine arguments. This is a very challenging and an interesting case, and you've done a nice job of explaining your positions, for which we thank you. This case is submitted. Thank you. Our last case for argument today is United States v. Meredith et al. Thank you. I know that we have ten minutes apiece on your side. I don't know what you're going to do with respect to response, but you each have ten minutes, and if you want to subdivide that wince to yourselves, just kind of let me know. The maximum we have is 30 minutes, so however you want to handle it. I understand, Your Honor. This is Joe Alfred Eisen, Jr., representing the defendant Meredith, the appellant in this case, and I intend to take some of Ms. Bobbie's, the appellant's, and Ms. Marsha Brewer's time by her consent, which you can confirm. Well, however you all want to work it, if one of you goes over, we don't give the other person a make-up time, so hopefully you have all conferred and everyone is happy, and so we'll move forward. If one of you needs to interrupt your counsel, we give you leave to come up and put a note in front of him that it's your time, whatever you'd like to do.
judges: Marbley, Kleinfeld, Smith